[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Date of Sentence February 8, 1995 Date of Application February 8, 1995 Date Application Filed February 14, 1995 Date of Decision September 28, 1999
Application for review of sentence imposed by the Superior Court, Judicial District of Hartford.
Docket No. CR 92-87232;
M. Fred DeCaprio and Kenneth A. Simon, Defense Counsel, for Petitioner.
Joan Alexander, Assistant State's Attorney, for the CT Page 14150 State.
Sentence Affirmed.
 BY THE DIVISION
Following a trial by jury the then 38 year old petitioner was convicted of Murder and sentenced to a term of 50 years. The factual basis for the petitioner's conviction is as follows:
The jury reasonably could have found the following facts. On March 29, 1992, at approximately 10:22 p. m., the defendant dialed 911 to report a shooting and to request medical assistance. He stated that he had "disarmed" a rifle accidentally and shot his girlfriend. He gave the dispatcher directions to the apartment that he shared with the victim. The dispatcher instructed him to wait outside with his hands in the air.
When the police officers arrived, the defendant was waiting for them outside with his hands raised. The police officers approached the defendant and patted him down for weapons. An officer read the Miranda rights to him and he was then handcuffed and placed in the backseat of a patrol car. The officers noticed an odor of alcohol on the defendant but he was not incoherent or stumbling and appeared to understand and follow their instructions.
The police officers then entered the victim's apartment and found a Weatherby 30.06 rifle on the floor approximately eight to ten feet from the door. One of the officers, Corporal John Driscoll, picked up the rifle, removed a spent shell from the chamber, and placed it against a wall. He also observed a box of cartridges, from which one cartridge was missing.
Earlier that evening, Mary Anthony and her boyfriend, Philip Weidelman, had visited the defendant and the victim. The defendant showed the Weatherby rifle to Weidelman and told him that the safety mechanism was on. Weidelman saw a box of cartridges in the gun case, and noticed that none of the CT Page 14151 cartridges was missing.
The victim was found lying face down near the bedroom door. She was unconscious and had no detectable pulse or respiration. She had a bluish complexion and a gunshot wound in her upper right shoulder. The blood near the wound was in the early stages of clotting. Attempts to resuscitate the victim were futile. A Life Star helicopter took the victim to Hartford Hospital, where she was pronounced dead.
While the other officers were attempting resuscitation, Driscoll periodically checked on the defendant, whom he knew from previous encounters. The defendant, who was nervous and talkative, made several unsolicited statements. He said that he had accidentally shot the victim while he was holding the rifle. He also said that while holding the rifle, he began to slide the bolt down. He then changed his mind, and as he put the handle of the bolt down, the rifle discharged.
After the victim was removed, the defendant agreed to go to the police station for an interview, stating that he wanted to cooperate "110 percent." At the station, an officer advised the defendant of his rights and the defendant signed a waiver form. The officer then conducted a tape-recorded interview.
During the interview, the defendant made the following statements. After his guests left, the defendant sat on the living room floor near the television and the victim sat in a nearby chair, reading a book. After a while, he decided to clean his Weatherby rifle, which he normally kept unloaded. As he pulled the rifle out of its case, the gun slipped and, as he reached for it, it discharged. The defendant claimed that the trigger action on the rifle was sensitive. The victim had risen from her chair, and he saw her fall to the ground. The defendant was evasive when asked about his exact position and that of the victim when the gun was fired. During the course of the interview, the defendant was angry and stated that he was "pissed" about what had happened. He was not sad, remorseful or confused at any point. After the interview, one of the officers typed a statement of the defendant's recitation of events. The defendant read the statement, initialed two corrections, and signed it.
Later that same evening, police officers drove the defendant to the house of his friend Bill Cleary. Over the next few days, CT Page 14152 the defendant told Cleary different versions of what had occurred. He stated first that he picked up the rifle and was startled by a loud noise, the gun slipped, and as he grabbed for it, the safety was dislodged and the rifle discharged. In the second version, he stated that he dropped the rifle and, as it fell, the butt hit the floor, causing it to discharge. Cleary did not believe the defendant's story and demanded that he tell him the truth. The defendant replied that after Anthony and Weidelman left, he and the victim had a "slight spat," he shot her and she got what she deserved.
In the weeks preceding the shooting, the defendant, on two occasions, made disparaging remarks and threatening actions to the victim. On both occasions the defendant was intoxicated. Approximately one to two months before the shooting, he was seen making a motion with his hand as if it were a gun and pointing at the victim's shoulder. While making the motion, he said, "If you know what's good for you, you'll do as I've told you to do or else you know what I'll — but you know what's at home waiting." Approximately three to four weeks prior to the shooting, the defendant again made disparaging remarks to and about the victim and again made a gun like motion with his hand pointed at the victim. See State v. Downey, 45 Conn. App. 148 (1997).
Petitioner's counsel argue that the petitioner, who had no prior record, is salvageable and posit that a split sentence would be more appropriate under all the circumstances. They argue, presumably correctly, that the petitioner has a serious drinking problem and that this murder was alcohol related.
The State's Attorney stresses that the petitioner made prior threatening gestures toward the victim, indicating he had given some thought to shooting her. Further, his judgment was not so clouded by alcohol that he was able to fabricate a story to the police as to how the killing occurred, that the victim was shot at close range and that he then wiped the deer rifle down to (presumably) remove fingerprints.
The sentencing court articulated its reasoning for its sentence, and that it considered the positive things in the petitioner's background, and weighed those against the heinousness of the crime.
Upon review of all these matters the Division concludes the sentence was within the parameters of reasonableness and CT Page 14153 proportionality under the circumstances. Accordingly, it is affirmed.
Klaczak, Norko and O'Keefe, J.s, participated in this decision.